FARMERS AUTOMOBILE INSURANCE ASSOCIATION, Plaintiff-Appellant,
v. MATTHEW J. WILLIAMS *et al.*, Defendants-Appellees.

Second District   No. 2—00—0091

Opinion filed April 16, 2001.

Robert Marc Chemers and Andrew G. Witik, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.

Colleen E. Cebula, of Law Offices of Cebula & Groark, P.C., of De Kalb, for appellees.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, the Farmers Automobile Insurance Association, appeals the trial court's entry of summary judgment in favor of defendants, Matthew J. Williams and Jan M. Courtney. Plaintiff argues that the court erred in ruling that Williams was entitled to coverage under an insurance contract between plaintiff and Courtney. We reverse and remand.

Plaintiff's complaint contained the following allegations. Courtney, a resident of De Kalb, was the named insured on a policy issued by plaintiff. The policy obligated plaintiff to provide underinsured motorist (UIM) coverage to Courtney or "any 'family member.' " The policy included the following definition:

" 'Family member' means a person related to you [Courtney] by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

The policy was effective from May 5, 1998, through November 5, 1998.

On July 12, 1998, Williams, Courtney's son, was injured in an automobile accident. He was a passenger in a vehicle driven by an underinsured motorist. The accident occurred in Coconut Creek, Florida, where Williams was living with his father, Courtney's ex-husband. Williams submitted to plaintiff a claim for UIM coverage under Courtney's policy.

According to plaintiff, on the date of the accident, Williams "was not a resident of [Courtney's] household in *** Illinois but instead was a resident of his father's household in *** Florida." Therefore, on the date of the accident, Williams was not covered by Courtney's policy. On those grounds, plaintiff sought a judgment declaring that it had no obligation to pay UIM benefits to Williams.

In his answer, Williams stated that on July 12, 1998, he was a resident of both Courtney's household and his father's household. Further, although he was "living with his father for the purpose of attending school," he was "a permanent resident of his mother's home." Courtney's answer was consistent with Williams'. Thus, defendants claimed that Williams was entitled to UIM benefits under Courtney's policy with plaintiff.

After discovery, both plaintiff and defendants moved for summary judgment (735 ILCS 5/2—1005 (West 1998)). Those motions were based on the following evidence.

In his deposition, Williams testified as follows. In 1996, he graduated high school in Coconut Creek, Florida. While in high school, he started and ended a romantic relationship with Jodie LaCau. After graduation, Williams moved to Courtney's residence in De Kalb. He began attending Kishwaukee Community College (KCC), taking

courses required for entry into the school's nursing program. He had a part-time job, and Courtney was helping him financially. He also received financial aid from the State of Illinois. He did not pay rent to Courtney. While living in De Kalb, he resumed his relationship with LaCau, who was still in Florida.

KCC's nursing program required two years of study. However, the program at Broward Community College (BCC), in Coconut Creek, required only 1½ years. Williams was entitled to a tuition reduction at either school because his mother lived in De Kalb and his father lived in Coconut Creek. However, he would get no financial aid from the State of Florida; he would pay his own tuition at BCC. He voluntarily decided to move to Florida and attend BCC. In May 1998, he moved to his father's residence in Coconut Creek. Attending BCC was his only motive for moving. LaCau's presence was merely an "upside"; Williams did not plan to be permanently involved with her. Although he would not begin classes until August or September 1998, Williams left for Florida in May to ensure that he was prepared.

When he moved, Williams closed his bank account but did not discontinue his gym membership. He "made sure to leave [his job] on very good terms" so that he knew "in the summer [he] would always have a job when [he came] home." He packed his car with some clothing, toiletries, compact discs, and photographs. He drove the car to Florida. He left behind "[n]inety percent" of his belongings: his posters, furniture, and sports equipment, and most of his clothes, pictures, and books. He made no arrangements for those belongings to be sent to him. He left his mother on good terms.

In Florida, Williams did not pay his father rent, and his father occasionally gave him money. His mother provided no financial support. He got a part-time job but did not open a bank account. He joined no organizations. His mail continued to go to De Kalb.

On the date of his accident, Williams was 21 years old. He had a key to each of his parents' residences. He had no set plans to return to De Kalb, but his room was as he had left it and he could have returned at any time. He had an Illinois driver's license, and his car was registered in Illinois. He belonged to a church in De Kalb. He had no doctor or dentist in Florida. He "considered [him]self still living [in De Kalb]." He was "just going away to school."

In October 1998, Williams and LaCau got engaged. In December 1998, Williams visited De Kalb for the first time since his move.

In her deposition, Courtney testified as follows. Williams told her that he was moving to attend a shorter nursing program and to be closer to LaCau. The move was not necessitated by any change in Courtney's financial or living conditions. Williams left KCC on good

terms. When he moved, he took only clothes and compact discs. Courtney sent him none of the belongings that he left behind, and she made no changes to his room.

Courtney claimed Williams as a dependent on her 1998 income tax return. After Williams moved, Courtney let lapse a health insurance policy that she had purchased for him. However, she continued to pay his dental bills.

After the move but before the accident, Williams told Courtney that he "would not be staying [in Florida] permanently, that he would be moving back." After the accident, he said that he did not want to "raise a family" in Florida. Because Williams was "a grown man," Courtney did not expect him to return to live with her. He was free to do so at any time, but he made his own decisions. He also handled his own finances, but he was unable to afford his own residence while in school.

The record contains the applications that Williams submitted to BCC and to his Florida employer. On his BCC application, which he signed on January 5, 1997, he listed his father's address as his own. His employment application, which he completed apparently on June 9, 1998, requested a present address and a permanent address. He listed his father's address as his present address. As his permanent address, he wrote "same."

The trial court ruled that, on the date of the accident:

> "Williams had not yet abandoned his residency with his mother in De Kalb, Illinois. The factors that indicate this intent are clear; his Illinois driver's license, his Illinois license plates on his vehicle, items belonging to him, in his room, in his mother's home with no declared intention to vacate, receipt of mail at his mother's residence.
>
> By the same token, the only real acts he did to indicate a contrary intention were to move into his father's house to attend another college and apply for a part-time job in the State of Florida.
>
> Many a college student leave[s] his/her home for other living conditions in order to complete their degrees. They live in other places and get part-time jobs. ***
>
>             * * *
>
> *** [These] acts *** are not true indicia *** of intent for residency."

On those grounds, the court denied plaintiff's motion for summary judgment, granted defendants' motion for summary judgment, and declared that "Williams was a resident of his mother's house for purposes of this insurance policy." Plaintiff appealed.

Plaintiff argues that we should reverse summary judgment in favor of defendants and enter summary judgment in favor of plaintiff.

However, we believe that none of the parties is entitled to summary judgment. Therefore, we reverse the trial court's order, but we remand the cause for trial.

Summary judgment is properly granted if the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there exists no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998); *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 374 (1998). Summary judgment is a drastic and extraordinary remedy that may be granted only when the movant's right is absolutely clear. *Green v. International Insurance Co.*, 238 Ill. App. 3d 929, 933 (1992). Our review of an order granting summary judgment is *de novo. Zekman*, 182 Ill. 2d at 374.

■ The phrase "resident of the household" has no fixed meaning. *Coriasco v. Hutchcraft*, 245 Ill. App. 3d 969, 970 (1993). The reasonable interpretation of the phrase requires a case-specific analysis of intent, physical presence, and permanency of abode. *Coriasco*, 245 Ill. App. 3d at 971. However, the controlling factor is the intent, as evinced primarily by the acts, of the person whose residence is questioned. *Cincinnati Insurance Co. v. Argubright*, 151 Ill. App. 3d 324, 330 (1986). If an absence from a residence is intended to be temporary, it does not constitute an abandonment or forfeiture of the residence. *Raprager v. Allstate Insurance Co.*, 183 Ill. App. 3d 847, 859 (1989).

■ Because a determination of residency depends on intent, it typically should not be made on a motion for summary judgment. Indeed, "summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." *Raprager*, 183 Ill. App. 3d at 859. Although summary judgment may still be granted if the record is sufficiently clear (see *Argubright*, 151 Ill. App. 3d at 330-31), it must be denied if the facts "are susceptible to different inferences by fair-minded persons." *Giannetti v. Angiuli*, 263 Ill. App. 3d 305, 314 (1994). We believe that reasonable persons could draw wholly divergent inferences from the facts of this case.

■ The question here is whether, at the time of his accident, Williams resided in Courtney's household. We first note that Williams' *declarations* suggest that he had not abandoned Courtney's residence. Williams testified that, despite his move to his father's residence, he "considered [him]self still living" in De Kalb, that he was "just going away to school." Furthermore, he indicated that he planned to return the next summer and resume his part-time job. Finally, according to Courtney, Williams told her "that he would be moving back, that [his

move] was not permanent." Although Williams' statements weigh less than his acts, his statements are not without value in this analysis. See *Stein v. County Board of School Trustees*, 40 Ill. 2d 477, 480 (1968).

Several of Williams' acts further suggest an intent to retain Courtney's residence as his own. On the date of his accident, the vast majority of his belongings were in De Kalb; his room was reserved for his use; he had a key to Courtney's residence; he had an Illinois driver's license; his car was registered in Illinois; he received mail at Courtney's residence; he belonged to a church in De Kalb; and his only dentist was in Illinois. These facts are wholly consistent with Williams' claim that he left Courtney's residence only for a temporary purpose, to pursue his education.

However, as plaintiff points out, other facts suggest that Williams intended to "leave Courtney's household forever." Although Williams stated that he moved only to enter BCC, his move into his father's residence indicated a greater permanence. Indeed, when he applied for a job in Florida, he stated that he was residing with his father both presently and permanently. Furthermore, he moved about three months before his classes were to begin. This suggests that, as Courtney related, Williams moved not only to attend college but to be close to LaCau, who would become his fiancée. Finally, Williams closed his bank account in Illinois, and he made no concrete plans to return to De Kalb on school breaks or at any time. In light of these facts, even Courtney did not expect that Williams would live with her again. If Courtney inferred that Williams did not intend to return, clearly a reasonable fact finder could make that inference as well.

The closeness of this case is reflected by a comparison with *Miller v. Hayes*, 233 Ill. App. 3d 847 (1992). In *Miller*, an issue was whether the defendant, who had enrolled at Colorado State University, remained domiciled at his parents' residence in Wilmette. The appellate court ruled as follows:

"[W]hile in college, [defendant] lived in a dormitory and returned to his parents' home on school vacations; he paid his college tuition as a nonresident; he had an Illinois driver's license ***; he was registered to vote in Illinois; he received mail at the Wilmette *** address; he maintained a savings account in Wilmette ***; [and] in his deposition ***, he referred to his home as Wilmette ***. In sum, we believe that defendant's conduct demonstrated that his domicile continued to be in Wilmette, Illinois." *Miller*, 233 Ill. App. 3d at 851.

Like the defendant in *Miller*, Williams left Illinois to attend college, used his Illinois address on some official documents, received mail at his Illinois address, and referred to Illinois as his home.

However, unlike the defendant in *Miller*, Williams lived with a parent while in college, represented that he was a permanent resident of Florida, closed his bank account in Illinois, and exhibited no plans to return during breaks. Thus, in light of authorities such as *Miller*, the proper outcome of this case is far from "absolutely clear." *Green*, 238 Ill. App. 3d at 933.

The authorities cited by the parties are no more helpful. Plaintiff asserts that this case is "strikingly similar" to *Coley v. State Farm Mutual Automobile Insurance Co.*, 178 Ill. App. 3d 1077 (1989). In that case, the plaintiffs' decedent was eligible for coverage only if he " 'live[d] with' " his grandfather, the named insured. *Coley*, 178 Ill. App. 3d at 1080. The record showed that the decedent had lived with his grandfather until his enlistment in the Air Force. At the time of his accident, the decedent lived on an Air Force base. However, he kept some of his belongings at his grandfather's house, had a room and received mail there, used his grandfather's address on official documents, and visited while on leave. Nevertheless, the appellate court held that the decedent was not entitled to coverage:

> "[T]he decedent lived on the Air Force base where he was assigned for duty. Under the common understanding of the expression 'live with,' he did not live with his grandfather at the time of his death." *Coley*, 178 Ill. App. 3d at 1081-82.

See also *State Farm Mutual Automobile Insurance Co. v. Taussig*, 227 Ill. App. 3d 913, 916 (1992) (following *Coley* on similar facts).

We acknowledge that, in this case, Williams may not have "lived with" Courtney at the time of his accident. However, the question is not whether Williams "lived with" Courtney; it is whether he was a "resident of [her] household." These are two very different questions, as the *Coley* court suggested:

> "Plaintiffs have repeatedly mentioned the decedent's intention to return to his grandfather's house after his discharge, that he used his grandfather's address to receive mail, and listed his grandfather's address as his legal residence on official documents, *et cetera*. These arguments go to the issue of intent related to the deceased's legal residence or domicile. The question here is not one of legal residence or domicile ***. [The decedent] did not 'live with' his grandfather for the purposes of this insurance policy." *Coley*, 178 Ill. App. 3d at 1083-84.

Thus, the distinction between this case and *Coley* is clear. In defining the term "live with," the *Coley* court was free to give conclusive effect to the fact that the decedent had left his grandfather's home. Accordingly, the court ignored the evidence suggesting that the decedent had intended to return. Here, however, the relevant term is

"resident of [the] household," and Williams' intent is the controlling factor. That intent is not clear enough to support summary judgment.

Defendants, on the other hand, assert that our case law supports a *per se* rule that an unemancipated student "resides" with his parents. We disagree. First, we note that whether Williams was emancipated from Courtney at the time of his accident is itself a disputed question of fact that would preclude summary judgment. See *Proctor Hospital v. Taylor*, 279 Ill. App. 3d 624, 629 (1996). In any event, the cases defendants cite do not contain the proffered rule.

In *State Farm Mutual Automobile Insurance Co. v. Differding*, 46 Ill. App. 3d 15 (1977), *rev'd on other grounds*, 69 Ill. 2d 103 (1977), the court did find that, although the claimant was away at college, she was unemancipated and thus a resident of her parents' household. However, in that case, the insurance policy stated that " 'unemancipated children, while away from [their parents'] household attending school, are deemed to be residents of [the] household.' " *Differding*, 46 Ill. App. 3d at 19. Because Courtney's policy contained no such inclusion, Williams' alleged unemancipation would not automatically determine his residency. The two concepts may be related but are legally distinct. See *Argubright*, 151 Ill. App. 3d at 330-31 (inferring residency partly from unemancipation but noting that different factors determine each).

In sum, Williams' intent, the controlling issue in this case, is completely unclear. Defendants' "right to judgment is not free from doubt, and *** any motion for summary judgment should have been denied notwithstanding the desire of the parties to use this procedure." *Giannetti*, 263 Ill. App. 3d at 314-15. Therefore, we reverse the trial court's order and remand the cause for trial.

The judgment of the circuit court of De Kalb County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

RAPP and GROMETER, JJ., concur.