2014 ND 39

**NODAK MUTUAL INSURANCE COMPANY, Plaintiff and Appellee**

v.

Eric **BAHR–RENNER,** Sara Daede, Ashley Collins, Billie Rauser, Kenneth McCoy, Con–Way Freight, Inc., Emily Young, J.C., a minor child, and Peggy Gwyther, deceased, Defendants

Eric Bahr–Renner, Sara Daede, Ashley Collins, J.C., a minor, Emily Young, and Kenneth McCoy, Appellants.

No. 20130091.

Supreme Court of North Dakota.

Feb. 20, 2014.

William P. Harrie, Fargo, N.D., for plaintiff and appellee.

Duane A. Lillehaug, Fargo, N.D., for appellants Eric Bahr–Renner, Sara Daede, Ashley Collins, J.C., a minor, and Emily Young.

Tatum O. Lindbo (appeared) and Timothy M. O'Keeffe (on brief), Fargo, N.D., for appellant Kenneth McCoy.

SANDSTROM, Justice.

[¶1] Eric Bahr–Renner, Sara Daede, Ashley Collins, J.C. (a minor), Emily Young, and Kenneth McCoy (collectively "claimants") appeal from a judgment that only the lower, "step-down" policy limits in an automobile insurance policy were available for their damages sustained in an automobile accident. We affirm, concluding the district court's finding of fact that Mary Gwyther was not a resident of her mother's household was not clearly erroneous and the step-down endorsement to the insurance policy did not violate North Dakota law.

I

[¶2] On January 14, 2010, Mary Gwyther was in a multi-vehicle accident while driving a pickup she co-owned with her mother, Peggy Gwyther, who died in the accident. The claimants allegedly suffered injuries and property damage as a result of the accident.

[¶3] The Gwyther vehicle was insured under a policy issued by Nodak Mutual Insurance Company ("Nodak"). The policy was issued to Peggy Gwyther as the

named insured and carried bodily injury liability limits of $100,000 for each person and $300,000 for each accident. The policy included a "step-down" endorsement which reduced the bodily injury policy limits to the statutory minimum of $25,000 per person and $50,000 per accident, and $25,000 for property damage, if the vehicle was being driven by an insured who was not a "family member" of the named insured. "Family member" was defined in the policy as a person related to the named insured who was a resident of the named insured's household.

[¶ 4] Peggy Gwyther lived in a home she co-owned with Mary Gwyther in Bismarck. Although Mary Gwyther was listed as a co-owner of the Bismarck property, she had never actually lived in the home, and had not lived with her parents since 1972. Mary Gwyther had been living in Switzerland since 2000. She owned a business in Switzerland, owned and insured a vehicle there, and had a Swiss driver's license and residence permit. In 2008 and 2012, however, Mary Gwyther voted by absentee ballot in North Dakota as a resident, declaring in applications and affidavits that she was a resident at her mother's Bismarck address. She also designated the Bismarck address as her permanent home address with the State Department.

[¶ 5] Nodak brought this interpleader action seeking a declaration it is only liable to pay the reduced step-down policy limits because Mary Gwyther was not a resident of Peggy Gwyther's household at the time of the accident and therefore was not a "family member" under the policy. The case was tried as a bench trial on stipulated facts. The district court found Mary Gwyther was not a resident of Peggy Gwyther's household, concluded the policy did not violate North Dakota law, and

concluded Nodak was required to pay only the lower step-down policy limits.

## II

[¶ 6] The claimants argue the district court erred in ruling Mary Gwyther was not a resident of her mother's Bismarck household on the day of the accident.

[¶ 7] When a case is tried before a district court on the basis of stipulated facts or documentary evidence, this Court reviews the court's findings of fact under the clearly erroneous standard of review of N.D.R.Civ.P. 52(a). *See Kadlec v. Greendale Twp. Bd. of Twp. Supervisors,* 1998 ND 165, ¶ 9, 583 N.W.2d 817; *State ex rel. Spaeth v. Eddy Furniture Co.,* 386 N.W.2d 901, 902 n. 3 (N.D.1986); *Stracka v. Peterson,* 377 N.W.2d 580, 582 (N.D.1985). The determination of whether an individual is a "resident" is a question of fact. *Dietz v. City of Medora,* 333 N.W.2d 702, 704 (N.D.1983). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Maddock v. Andersen,* 2013 ND 80, ¶ 8, 830 N.W.2d 627.

[¶ 8] The Nodak insurance policy provided that "any 'family member'" was not subject to the lower, step-down policy limits but was entitled to the same amount of coverage as the named insured. The policy defined "'Family member'" as "a person related to you by blood, marriage or adoption, including a ward or foster child, who is a resident of your household." Although this Court has encountered similar language in previous insurance cases, *see, e.g., Schleuter v. Northern Plains Ins. Co., Inc.,* 2009 ND 171, ¶ 20, 772 N.W.2d 879; *Center Mut. Ins. Co. v. Thompson,* 2000 ND 192, ¶ 4, 618 N.W.2d 505; *Close v.*

*Ebertz,* 1998 ND 167, ¶ 9, 583 N.W.2d 794; *Johnson v. Center Mut. Ins. Co.,* 529 N.W.2d 568, 570 (N.D.1995); *State Farm Mut. Auto. Ins. Co. v. LaRoque,* 486 N.W.2d 235, 238 (N.D.1992), we have not interpreted who falls within the meaning of the phrase "resident of your household" for purposes of an automobile insurance policy. However, the phrase is commonly used in both homeowners' and automobile insurance policies, and there is a substantial body of case law addressing the question. *See, e.g.,* 8 L. Russ & T. Segalla, *Couch on Insurance,* §§ 114:12–114:16 (3rd ed.2005); C. MacWilliam, Annot., *Who is "member" or "resident" of same "family" or "household" within no-fault or uninsured motorist provisions of motor vehicle insurance policy,* 66 A.L.R. 5th 269 (1999); 43 Am. Jr.2d *Insurance* § 703 (2013).

[¶ 9] Numerous courts have ruled, as did this Court in *LaRoque,* 486 N.W.2d at 238, that the phrase "residing in the same household" is unambiguous. *See, e.g., Farmers Ins. Co. v. Plunkett,* 687 P.2d 470, 472 (Colo.Ct.App.1984); *Engerbretsen v. Engerbretsen,* 675 A.2d 13, 19 (Del.Super.Ct.1995); *VanBebber v. Roach,* 252 S.W.3d 279, 287 (Tenn.Ct.App.2007). Courts agree that determining whether an individual falls within the meaning of the phrase requires a case-specific analysis of the particular facts and circumstances, *see, e.g., Midwest Mut. Ins. Co. v. Titus,* 849 P.2d 908, 910 (Colo.Ct.App.1993); *Farmers Auto. Ins. Ass'n v. Williams,* 321 Ill. App.3d 310, 254 Ill.Dec. 231, 746 N.E.2d 1279, 1282 (2001); *General Motors Acceptance Corp. v. Grange Ins. Ass'n,* 38 Wash. App. 6, 684 P.2d 744, 746 (1984), and that determination of the issue is a question of fact. *See* 8 *Couch on Insurance,* at § 114:12. Consequently, technical notions of legal residence and domicile are not controlling. *See, e.g., Farmers Ins. Co. v.*

*Oliver,* 154 Ariz. 174, 741 P.2d 307, 312 (App.1987); *Ehrhard v. State Farm Mut. Auto. Ins. Co.,* 274 So.2d 911, 916 (La.Ct. App.1973). We agree with the list of nonexclusive factors set forth by the West Virginia Supreme Court in *Glen Falls Ins. Co. v. Smith,* 217 W.Va. 213, 617 S.E.2d 760, 765 (2005), to consider in making the determination:

> [I]n a homeowners' insurance policy [or an automobile insurance policy] that does not otherwise define the phrase "resident of your household," the phrase means a person who dwells—though not necessarily under a common roof—with other individuals who are named insureds in a manner and for a sufficient length of time so that they could be considered to be a family living together. The factors to be considered in determining whether that standard has been met include, but are not limited to, the intent of the parties, the formality of the relationship between the person in question and the other members of the named insureds' household, the permanence or transient nature of that person's residence therein, the absence or existence of another place of lodging for that person, and the age and self-sufficiency of that person.

(quoting *Farmers Mut. Ins. Co. v. Tucker,* 213 W.Va. 16, 576 S.E.2d 261 (2002)). Other courts rely on similar factors. *See, e.g., Oliver,* 741 P.2d at 311; *Titus,* 849 P.2d at 910; *Williams,* 254 Ill.Dec. 231, 746 N.E.2d at 1282; *Vierkant v. AMCO Ins. Co.,* 543 N.W.2d 117, 122 (Minn.Ct.App. 1996); *VanBebber,* 252 S.W.3d at 288–89; 8 *Couch on Insurance,* at § 114:13, and cases collected therein.

[¶ 10] The record reflects that Mary Gwyther, who was 60 years old at the time of the accident, has been self-sufficient since the early 1970s and has not lived with her parents since 1972. Mary Gwyth-

er's parents purchased the Bismarck home in 1997 or 1998 and placed her name on the deed, as they had done with other family assets since she was one or two years old. Mary Gwyther moved to Switzerland in 1990 and lived there until 1996. Between 1997 and 2000 she lived in New Jersey and Singapore. She returned to Switzerland in 2000 and has lived there since. Mary Gwyther has owned a business in Switzerland since 2001, receives all of her mail in Switzerland, and pays business and income taxes there. She has not paid United States taxes since her last move to Switzerland, but paid North Dakota taxes in 2006 following a sale of property. Mary Gwyther owns a vehicle in Switzerland, where it is insured, licensed, and registered. She has a Swiss driver's license and has not had a North Dakota driver's license for approximately 30 years. Mary Gwyther's name was added to the title of the vehicle involved in the accident after her father died in 2006.

[¶ 11] Mary Gwyther is a United States citizen, has a United States passport, and has a Swiss residence permit. She voted in North Dakota by absentee ballot for the presidential elections in 2008 and 2012, listing her residential address as the Bismarck home. She testified in her deposition that "when you're an expat living outside the United States, you have to provide the U.S. government with a, quote, permanent home address, and I have always used my parents' address." Mary Gwyther admitted she did not consider herself to be a resident of her mother's household in Bismarck and never lived in the home, and testified she would visit her mother "[u]sually once a year, sometimes twice."

[¶ 12] In determining Mary Gwyther was not a resident of her mother's household, the district court noted in its oral findings that she was 60 years old, was

"fully emancipated," and "had been living on her own independently for decades." The court reasoned Mary Gwyther's "home was always somewhere in Switzerland at least in recent years" and "she was only physically present at this address in Bismarck when she would come to visit her parents." The court said, "I am having a great deal of difficulty equating voting, casting an absentee ballot with being a resident of a specific house where you've never lived," and reasoned:

> I simply can't find any factual support for the conclusion that [Peggy's] house in Bismarck was Mary['s] ... residence. And voting on an absentee basis from the country of Switzerland to me doesn't change that conclusion at all.

[¶ 13] To support their argument that the district court erred, the claimants rely on the absent voter provisions of N.D.C.C. ch. 16.1–07 requiring voter affidavits, in which she affirmed that she was a resident of the Bismarck address, and this Court's statement in *Dietz*, 333 N.W.2d at 704, a case involving the qualifications of an officer in a municipality, in which we said "[a] person may have two or more actual residences, as distinguished from his single legal residence." Special concepts of residency designed for unrelated and specific purposes do not trump the actual reality of the situation, where the term "resident" in the insurance policy is linked to the word "household," which is commonly defined as "those who dwell under the same roof and compose a family." *Merriam Webster's Collegiate Dictionary* 602 (11th ed.2005). This evidence under some circumstances might be relevant to the question of intent, but it does not require finding Mary Gwyther was a resident of her mother's household in Bismarck.

[¶ 14] The district court considered the totality of the circumstances in this case. We conclude the court's finding that Mary

Gwyther was not a resident of her mother's household for purposes of the insurance policy is not clearly erroneous.

## III

[¶ 15] The claimants argue the district court erred in concluding the Nodak insurance policy's step-down endorsement did not violate state law.

[¶ 16] An endorsement to the Nodak insurance policy issued to Peggy Gwyther provided:

LIMIT OF LIABILITY

A. The following limits of liability apply:

1. With respect to you or any "family member": The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

2. With respect to any other person who is insured under this policy: The amount of coverage for damages due to "bodily injury" to one person is limited to the Statutory Financial Responsibility Bodily Injury Limit for one person.

The total amount of coverage for all damages due to "bodily injury" to two or more persons in the same occurrence is limited to the Statutory Financial Responsibility Bodily Injury Limit for two or more persons.

The maximum for all damages to all property in any one occurrence is limited to the Statutory Financial Responsibility Property Damage Limit for any one accident.

## A

[¶ 17] The claimants argue the step-down endorsement violates N.D.C.C. § 26.1–40–16 because the statute requires the named insured's written acquiescence for a coverage reduction endorsement and Mary Gwyther's mother did not sign it or otherwise acquiesce in it.

[¶ 18] Section 26.1–40–16, N.D.C.C., provides:

By written agreement with the named insured, a private passenger automobile insurance policy covering an automobile or other motor vehicle registered or principally garaged in this state may exclude a named individual, individuals, or class of individuals from coverage. The policy may contain a restrictive endorsement reducing the limits of liability, uninsured motorist coverage, underinsured motorist coverage, basic no-fault benefits coverage, or collision coverage while the vehicle is operated by a named individual or class of individuals. However, if the policy does provide liability coverage to a person named in a restrictive endorsement, the coverage may not be less than the minimum provided under section 26.1–40–15.2, section 26.1–40–15.3, subsection 2 of section 26.1–41–01, and section 39–16.1–11. If the policy excludes a named individual, individuals, or class of individuals from all coverage

and the named insured expressly or impliedly consents to the operation of a secured motor vehicle by the excluded party, the named insured is not relieved of personal liability as provided by subsection 5 of section 26.1–41–02.

[¶ 19] Statutory interpretation is a question of law, fully reviewable on appeal. *Haugland v. City of Bismarck,* 2012 ND 123, ¶ 47, 818 N.W.2d 660. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. If the language of a statute is ambiguous, a court may resort to extrinsic aids, including legislative history, to resolve the ambiguity. N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to different, rational meanings. *Leno v. K & L Homes, Inc.,* 2011 ND 171, ¶ 13, 803 N.W.2d 543.

[¶ 20] Section 26.1–40–16, N.D.C.C., is not ambiguous. The first sentence of the statute requires a written agreement with the insured before individuals or a class of individuals may be excluded from coverage. The second and third sentences of the statute address restrictive endorsements containing step-down provisions, which are a different subject matter than exclusions from coverage, and do not mention the requirement of a written agreement. We conclude N.D.C.C. § 26.1–40–16 does not require a "written agreement" or other form of an insured's acquiescence for a valid restrictive endorsement containing a step-down provision.

B

[¶ 21] The claimants argue there is insufficient notice of the step-down provision because it was "buried" in an eight-page endorsement to the insurance policy. They argue the step-down provision should have been a "separate, stand alone endorsement."

[¶ 22] The claimants rely on the South Dakota Supreme Court's decision in *Mid–Century Ins. Co. v. Lyon,* 1997 SD 50, 562 N.W.2d 888, in which the court interpreted a statutory provision similar to N.D.C.C. § 26.1–40–16. In *Lyon,* the court held a step-down provision contained in the body of an insurance policy, rather than in a separately attached restrictive endorsement required by the statute, was invalid because the legislature "intended an extra measure of disclosure, contemplating by the use of this language that restrictive endorsements would be positioned in a separate, prominent place." 1997 SD 50, ¶ 9, 562 N.W.2d 888 (footnote omitted). The court, however, did not rule that the step-down provision must be contained in a "stand alone endorsement."

[¶ 23] In this case, the step-down provision, in accordance with N.D.C.C. § 26.1–40–16, was contained in a restrictive endorsement to the insurance policy and was titled in large print: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY. AMENDMENT OF POLICY PROVISIONS–NORTH DAKOTA." The step-down provision appears on the second page of the endorsement. We conclude the endorsement provides sufficient notice to an insured of the importance of its provisions.

C

[¶ 24] The claimants argue the step-down provision is invalid because it does not state the reduced bodily injury

policy limits of $25,000 per person and $50,000 per accident, and $25,000 for property damage, but merely states the amount of coverage "is limited to the Statutory Financial Responsibility" limits.

[¶ 25] The claimants rely on *Cullum v. Farmers Ins. Exchange*, 857 P.2d 922, 923–24 (Utah 1993), in which the Utah Supreme Court ruled a step-down clause referring to " 'the limits of the Financial Responsibility Law' " was invalid under the plain language of a Utah statute prohibiting the incorporation in insurance policies of provisions not appearing in the policy or in attached documents. The claimants have not drawn our attention to a similar North Dakota statute, nor have we found one. Indeed, in *American Nat'l Fire Ins. Co. v. Farmers Ins. Exchange*, 927 P.2d 186, 191 (Utah 1996), the Utah Supreme Court, applying Idaho law, upheld the validity of an Idaho insurance policy which contained a step-down provision referring to "the amount required by the Idaho Financial Responsibility Law" rather than to the dollar amount. The court distinguished *Cullum* because Idaho did not have a parallel statutory provision, and reasoned:

> An automobile is by its very nature mobile and can be expected to cross state lines frequently. Reforming an automobile liability insurance policy every time the automobile crosses state lines would invalidate the expectations of the parties and destroy predictability both for the insurance company in adjusting its policies, fees, income, and expense projections and for the party purchasing liability insurance.

*Id.* at 192. The majority of courts uphold the validity of step-down provisions that limit coverage to the statutory minimum, without stating the dollar amount of coverage. *See, e.g., Krause v. Krause*, 589 N.W.2d 721, 726–27 (Iowa 1999); *Brooks v. Bennett*, 29 Kan.App.2d 308, 26 P.3d 73, 75 (2001); *Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 849 A.2d 539, 541 (2004); M. Caner, Annot., *Validity and operation of "step-down" provision of automobile liability policy reducing coverage for permissive users*, 29 A.L.R. 5th 469 § 5 (1995), and cases collected therein.

[¶ 26] We conclude the step-down provision is not invalid for failing to recite the dollar amounts of reduced coverage.

## IV

[¶ 27] We do not address other arguments raised because they either are unnecessary to the decision or are without merit. We conclude the district court did not err in ruling Nodak was required to pay the claimants the lower step-down policy limits under the endorsement to the insurance policy. The judgment is affirmed.

[¶ 28] GERALD W. VANDE WALLE, C.J., ALLAN L. SCHMALENBERGER, EVERETT NELS OLSON, S.J., and DANIEL J. CROTHERS, J., concur.

[¶ 29] The Honorable ALLAN L. SCHMALENBERGER, S.J., and the Honorable EVERETT NELS OLSON, S.J., sitting in place of MARING, J., and KAPSNER, J., disqualified. The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision.