Filed 2/22/16 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2016 ND 43

Nodak Mutual Insurance Company, Plaintiff and Appellee

v.

Nickolas Chance Koller, as Personal Representative 

to the Estate of Chase Koller, Defendant

and

Chris Kemp, as the guardian and next friend of 

G.K., and on behalf of all of the heirs at law 

of Stephanie Nelson, deceased, Defendant and Appellant

v.

Todd Anderson, individually and Becky Anderson,

individually, Third-Party Defendants

No. 20150079

Appeal from the District Court of Griggs County, Southeast Judicial District, the Honorable James D. Hovey, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Stephen W. Plambeck (argued), 66 Prairiewood Drive, Fargo, N.D. 58103, and William P. Harrie (appeared), P.O. Box 2626, Fargo, N.D. 58108-2626, for plaintiff and appellee.

Daniel M. Traynor (argued), P.O. Box 838, Devils Lake, ND 58301-0838, for defendant and appellant.

Nodak Mutual Ins. Co. v. Koller

No. 20150079

 

McEvers, Justice.

[¶1] Chris Kemp, as the guardian of G.K., appeals from a district court’s judgment determining that only the lower, “step-down” policy limits of an automobile insurance policy were available in defense of a wrongful death lawsuit resulting from a fatal accident because Chase Koller was not a resident of Todd Anderson’s household at the time of the accident.  We affirm.

I

[¶2] On or about June 7, 2011, Chase Koller and Stephanie Nelson, his girlfriend, were killed when Koller allegedly lost control of an all-terrain vehicle.  Nelson is the mother of G.K., a child from a previous relationship.  Becky Anderson, Koller’s mother, was the registered owner of the vehicle.  The vehicle was insured under a policy issued by Nodak Mutual Insurance Company (“Nodak”).  Todd Anderson, Koller’s stepfather, is the named insured.  The policy provides coverage for any “family member” of the named insured, up to $100,000 per incident.  The policy defined a “family member” as “a person related to you by blood, marriage or adoption, including a ward or foster child, who is a resident of your household.”  The policy included a “step-down” endorsement that reduced the policy limits to $25,000 per incident if the vehicle was being driven by an insured who was not a “family member” of the named insured.

[¶3] According to the record, Koller moved out of the Anderson’s household in 2003, the Andersons had not listed Koller as a dependant on their tax returns since 2002.  Todd Anderson dropped Koller as an authorized driver on his Nodak policy in 2005.  The record also reflects that Koller moved to Grand Forks, North Dakota,  in 2006 where he intermittently lived with a girlfriend with whom he had a child, A.K.

[¶4] According to testimony, in the fall of 2010, Koller rented an apartment in Grand Forks where he lived with A.K.  Around December 2010, Koller lost his driver’s license after a driving under the influence conviction.  In February 2011, Koller’s state-issued non-driver identification card identified his resident address as his Grand Forks apartment.  In March or April 2011, Koller lost his job in Grand Forks.

[¶5] According to testimony, Koller obtained employment at Red Willow Resort, north of Binford, North Dakota, where he expected to work temporarily during the summer of 2011.  Koller began staying at the Andersons’ home on May 1, 2011, while he worked at the resort during the summer.  Koller brought clothes for himself  and A.K. and a limited amount of personal items, including toiletries and a game system to the Andersons’ home.  Koller did not have a key to the Andersons’ home.  According to testimony, Koller referred to the Andersons’ house as his home.  Becky Anderson testified that Koller did not pay rent, Koller and A.K. both had rooms in the house, she gave Koller rides because he did not have a driver’s license, and she provided daycare services for A.K. at no charge.  Koller maintained his Grand Forks apartment while staying at the Andersons’ home.  Koller continued to pay rent and utilities, he continued to receive mail, and he kept furnishings at the apartment.  Nelson searched for construction jobs in Devils Lake, North Dakota, for Koller to work after his summer employment would end.  Nelson also searched for apartments in Devils Lake where she and Koller could live together.  According to testimony, Koller intended to leave the Andersons’ home at the end of the summer of 2011 and move to Devils Lake to live with Nelson.  The Andersons also intended for Koller to move out by the end of the summer of 2011.

[¶6] After the fatal accident, Nodak retained an attorney to represent Becky Anderson to prepare probate documents in Griggs County, North Dakota, which attested:  “At the time of death, [Chase Koller] was domiciled in Griggs County, ND, though maintained [a] residence in Grand Forks County, ND. . . .  Venue for this case is in this County because at the time of Decedent’s death, Decedent was living and working in [Griggs] County.”  The district court in the probate matter determined venue was proper.

[¶7] Nodak sued Becky Anderson in her capacity as the Personal Representative to the Estate of Chase Koller, and Chris Kemp, as guardian of G.K., and the heirs of Stephanie Nelson, seeking a declaration that it was only liable to pay the reduced step-

down policy limits because Koller was not a resident of Todd Anderson’s household and, therefore, was not a “family member” under the policy.  Kemp filed an answer, cross-claim, and third-party complaint asserting wrongful death against Becky Anderson in her capacity as the Personal Representative to the Estate of Chase Koller, and asserting negligent entrustment against Todd and Becky Anderson individually, claiming the family car doctrine applied.  The district court severed Kemp’s wrongful death claim from Nodak’s declaratory judgment action under N.D.R.Civ.P. 21.  In the declaratory judgment action, Kemp moved for summary judgment.  Nodak filed a return and brief in response to Kemp’s motion for summary judgment arguing that the district court should deny Kemp’s motion and grant summary judgment in its favor.  After a hearing, the district court entered an order granting Kemp’s motion for summary judgment determining that Koller was a resident of the Andersons’ household under Nodak’s policy.

[¶8] Before the district court entered judgment, this Court decided 
Nodak Mutual Ins. Co. v. Bahr-Renner
, 2014 ND 39, 842 N.W.2d 912, a case in which we interpreted an identical “step-down” provision.  After reviewing this Court’s decision in 
Bahr-Renner
, the district court vacated its order granting Kemp’s motion for summary judgment and scheduled the matter for trial.  Following a bench trial, the district court applied the factors we adopted in 
Bahr-Renner
 and found that Koller was not a resident of Todd Anderson’s household and concluded Nodak was only required to pay the “step-down” policy limits.   Kemp appeals from the district court’s declaratory judgment in favor of Nodak.

II

[¶9] This Court reviews declaratory judgments under the same standards as other judgments.  
Nationwide Mut. Ins. v. Lagodinski
, 2004 ND 147, ¶ 7, 683 N.W.2d 903.  Whether Koller was a resident of Todd Anderson’s household at the time of his death is a question of fact.  
See
 
Bahr-Renner
, 2014 ND 39, ¶ 7, 842 N.W.2d 912.  A finding of fact can be set aside on appeal only if it is “clearly erroneous,” giving “due regard to the trial court’s opportunity to judge the witnesses’ credibility.”  N.D.R.Civ.P. 52(a)(6); 
see
 
Knudson v. Kyllo
, 2013 ND 102, ¶ 7, 831 N.W.2d 763.  “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.”  
Bahr-Renner
, 2014 ND 39, ¶ 7, 842 N.W.2d 912.  “‘A district court’s findings of fact are presumed to be correct, and we review the evidence in the light most favorable to the findings.’”  
Schmitt v. Schmitt
, 2014 ND 225, ¶ 10, 857 N.W.2d 362  (quoting 
Paulson v. Paulson
, 2011 ND 159, ¶ 6, 801 N.W.2d 746).

III

[¶10] Kemp argues the district court’s finding that Koller was not a resident of Todd Anderson’s household on the day of the accident is clearly erroneous.

[¶11] The Nodak insurance policy provided that “any ‘family member’” was not subject to the lower, step-down policy limits but was entitled to the same amount of coverage as the named insured.  The policy defined a “family member” as “a person related to you by blood, marriage or adoption, including a ward or foster child, who is a resident of your household.”  This Court interpreted the phrase “resident of your household” for purposes of an automobile insurance policy in 
Bahr-Renner
 stating:

We agree with the list of nonexclusive factors set forth by the West Virginia Supreme Court in 
Glen Falls Ins. Co. v. Smith
, 217 W.Va. 213, 617 S.E.2d 760, 765 (2005), to consider in making the determination: 

[I]n a homeowners’ insurance policy [or an automobile insurance policy] that does not otherwise define the phrase “resident of your household,” the phrase means a person who dwells—though not necessarily under a common roof—with other individuals who are named insureds in a manner and for a sufficient length of time so that they could be considered to be a family living together.  The factors to be considered in determining whether that standard has been met include, but are not limited to, 
the intent of the parties, the formality of the relationship between the person in question and the other members of the named insureds’ household, the permanence or transient nature of that person’s residence therein, the absence or existence of another place of lodging for that person, and the age and self-sufficiency of that person
.

(quoting 
Farmers Mut. Ins. Co. v. Tucker
, 213 W.Va. 16, 576 S.E.2d 261 (2002)).  Other Courts rely on similar factors.  
See e.g.
, [
Farmers Ins. Co. v.] Oliver
, 741 P.2d [307,] 311 [(Ariz. Ct. App. 1987)]; 
[Midwest Mut. Ins. Co. v.] Titus
, 849 P.2d [908,] 910 [(Colo. Ct. App. 1993)]; 
[Farmers Auto. Ins. Ass’n v.] Williams
, 746 N.E.2d [1279,] 1282 [(Ill. Ct. App. 2001)]; 
Vierkant v. AMCO Ins. Co.
, 543 N.W.2d 117, 122 (Minn. Ct. App. 1996); 
VanBebber [v. Roach
], 252 S.W.3d [279,] 287 [(Tenn. Ct. App. 2007)]; 
8 Couch on Insurance
, at § 114:13, and cases collected therein.

2014 ND 39, ¶ 9, 842 N.W.2d 912 (emphasis added).

[¶12] The 
Bahr-Renner
 factors are nonexclusive considerations for the district court to apply in making a determination on a case-by-case basis whether the standard has been met.  
See
 
Bahr-Renner
, 2014 ND 39, ¶ 9, 842 N.W.2d 912.  Additionally, the district court is not required to make a determination under each factor, but considers the totality of the circumstances in finding whether an individual is a resident of a named insured’s household.  
See
 
id.
 at ¶ 13 (concluding the district court considered the totality of the circumstances without making determinations under each factor).

[¶13] Here, the district court considered the nonexclusive factors adopted in 
Bahr-

Renner
 in determining whether Koller was a resident of Todd Anderson’s household at the time of the accident.  Therefore, we must affirm the district court’s finding that Koller was not a resident of Todd Anderson’s household unless that finding is clearly erroneous.  
See
 N.D.R.Civ.P. 52(a)(6) (“Findings of fact . . . whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court’s opportunity to judge the witnesses’ credibility.”).

A.  Intent of the Parties

[¶14] Kemp argues the district court erred in its consideration of the “intent of the parties” factor by failing to consider all relevant evidence of intent.  Kemp further argues the district court failed to recognize, by expressing an intent to abandon the Grand Forks residence, that Koller was a resident of Todd Anderson’s household.

[¶15] In determining that Koller and the Andersons did not intend to become a family living together for purposes of the insurance policy, the district court found:

Koller [did not] tell his mother what his plans were at the end of the summer.  Koller’s stepfather Todd Anderson was okay with Koller moving in after getting the job at Red Willow Resort.  Todd expected the job to last all summer and for Koller to reside in Todd and Becky’s house.

At the time of the accident, Koller and Nelson were in a dating relationship described as serious.  Nelson planned to live in Devils Lake, ND and had been looking for an apartment for herself and Koller there.  Nelson planned to attend Lake Region State College.  Nelson had been looking for construction jobs for Koller who planned to move to Devil[]s Lake to live with Nelson.  Job Service records show that Nelson was searching for construction jobs in March 2011, jobs for which she neither had training nor experience.  The two planned to live with Nelson’s mother in Devils Lake until they could find a place of their own.

. . .  The evidence also shows Koller had no intention of remaining at the Todd and Becky Anderson house after the resort closed for the summer but likely intended to move to Devils Lake to live with his girlfriend Nelson.  The Anderson[s’] intent was to provide temporary housing for Becky’s son and granddaughter for the summer.

[¶16] Evidence in the record supports the district court’s finding that the parties did not intend to become a family living together for purposes of the insurance policy.  Numerous individuals testified that Koller and Nelson’s relationship was serious.  According to testimony, Nelson was employed in Devils Lake and planned to attend college there.  Nelson searched for jobs on behalf of Koller located in Devils Lake.  Nelson also searched for apartments so that they could live together.  Kathleen Nelson, Nelson’s mother, further testified that Koller and Nelson asked if they could move into her house after the summer if they did not have an apartment by then.

[¶17] Becky Anderson testified that Koller left his furnishings and many personal effects in Grand Forks, including kitchen furniture, bedroom furniture, and toys for A.K.  She testified that Koller would return to Grand Forks to pick up his mail delivered to his Grand Forks apartment.  She further testified that Koller did not have a key to the Andersons’ house and referred to the room that Koller stayed in as the “guest room.”  Todd Anderson testified that Koller was going to live at the residence “as long as he was working,” Koller was not allowed to treat the residence as his home, and Koller “had to have respect to our wishes.”  The record suggests any intent by Koller to abandon the Grand Forks residence in favor of a possible move to Devils Lake was a future event not associated with making the Anderson home his residence.

[¶18] We conclude the district court’s finding regarding the intent of the parties is not clearly erroneous.  

B.  Formality of the Relationship

[¶19] Kemp argues the district court erred in its determination under the “formality of the relationship” factor because it focused on one relationship to the exclusion of all others, and thus failed to consider all “other members of the name insured’s” household.  Specifically, Kemp argues the district court should have considered Koller’s relationship with Todd Anderson and the Andersons’ relationship with A.K.

[¶20] The district court determined that the relationship between Koller and Becky Anderson “could not be more formal, mother-son . . . .”  In its findings, the district court did consider all members staying in the Todd Anderson household.  In determining the relationship between Koller and Becky Anderson was formal, the district court found:

There is no dispute that Koller is a person related by blood, marriage or adoption.  He is Becky Anderson’s biological child and related to Todd Anderson by marriage (stepson). . . .

. . . Koller paid no rent to his mother and stepfather.  Becky would babysit A.K. during the summer of 2011 at times, and at times A.K. would go to daycare in Binford.

[¶21] The factor specifies that the formality of the relationship to be analyzed is between the “person in question” and the “other members of the named insured’s household.”  The district court concluded the relationship between Koller and Becky Anderson “could not be more formal,” in essence, weighing this factor in favor of the family relationship.  Even if the district court failed to mention Todd Anderson and A.K. in the conclusions of law, the failure was insignificant as the factor was weighed in favor of Koller being a resident of the Anderson’s household; therefore, this argument is without merit.  

[¶22] We conclude the district court’s finding regarding the formality of the relationship is not clearly erroneous.

C.  Permanence or Transient Nature

[¶23] Kemp argues the district court erred in giving undue weight to the “permanence or transient nature” factor by neglecting to make a determination regarding the “existence of another place of lodging” factor.  Kemp further argues the totality of the circumstances surrounding the factor supports a conclusion that Koller was a resident of Todd Anderson’s household at the time of his death.

[¶24] The district court determined that Koller’s stay in the Andersons’ household was “transient” in nature and “solely the result of Koller’s loss of employment in Grand Forks.”  In determining that the nature of Koller’s stay with the Andersons’ was transient in nature, the district court found:

Koller was 26 years old when he died.  Koller’s death certificate listed his residence as . . . apt. 5[,] Grand Forks, ND (ex P-2) as did his driver’s license (ex P-3). . . .  Koller moved into Todd and Becky Anderson’s home on May 1st, 2011 after losing his job . . . in Grand Forks at the end of March or early April, 2011.  He took a job at Red Willow Resort . . . and expected to stay with his mother for at least the summer of 2011 while working at the resort.  Koller had guests over with the permission of his mother.  He came and went as he pleased from his mother’s house.  He had his own room at his mother’s house as did his daughter, A.K., Becky’s granddaughter.  Koller paid no rent to his mother and stepfather.  Becky would babysit A.K. during the summer of 2011 at times, and at times A.K. would go to daycare in Binford.  Koller’s obituaries (3) identified his residence as Binford, ND, formerly Grand Forks, ND.  Becky assisted with the preparation of those obituaries.

On October 22nd, 2012 Becky signed an application for appointment of personal representative which was prepared by a lawyer hired by Nodak Mutual insurance company.  Becky swore to the contents of the application which stated: “At the time of death, Decedent was domiciled in Griggs County, ND, though maintained a residence in Grand Forks County, ND.  Venue is Griggs County because at the time of Decedent’s death, Decedent was living and working in this County.”  The stated purpose for the application was for the limited purposes of a Declaratory Judgment action.

Koller did not bring any furniture with him to his mother’s home when he left Grand Forks nor did Koller tell his mother what his plans were at the end of the summer.  Koller’s stepfather Todd Anderson was okay with Koller moving in after getting the job at Red Willow Resort.  Todd expected the job to last all summer and for Koller to reside in Todd and Becky’s house.

At the time of the accident, Koller and Nelson were in a dating relationship described as serious.  Nelson planned to live in Devils Lake, ND and had been looking for an apartment for herself and Koller there. . . .  The two planned to live with Nelson’s mother in Devils Lake until they could find a place of their own.

The evidence presented shows the court that Koller’s move from Grand Forks to his mother’s home near Red Willow Resort was temporary and resulted from Koller’s loss of employment . . . in Grand Forks.  The evidence also shows that Koller had no intention of remaining at the Todd and Becky Anderson house after the resort closed for the summer but likely intended to move to Devils Lake to live with his girlfriend Nelson.  The Anderson’s [sic] intent was to provide temporary housing for Becky’s son and granddaughter for the summer.  Koller was fully emancipated and self-sufficient at the time of his death and was not dependent on his mother and stepfather for financial support. . . .  Koller had been removed as a listed driver on Todd Anderson’s insurance as of June 12, 2005.  Based on these facts as applied to the law outlined below, the court finds that Koller was not a resident of the Todd and Becky Anderson household as contemplated by the Nodak policy and the law.

[¶25] Evidence in the record supports the district court’s finding that Koller’s stay at the Andersons’ household was transient in nature.  According to testimony, Koller lived in Grand Forks before he lost his job.  The record suggests the only reason Koller stayed with the Andersons was to work a temporary, summer job, and that Koller intended to move to Devils Lake with Nelson at the end of the summer.

[¶26] We conclude the district court’s finding on the permanence or transient nature of Koller’s stay with the Andersons is not clearly erroneous.

D.  Absence or Existence of Another Place of Lodging

[¶27] Kemp argues the district court erred in failing to make a determination regarding the “existence of another place of lodging” factor.  Kemp further argues the totality of the circumstances surrounding the factor supports a conclusion that Koller was a resident of Todd Anderson’s household at the time of his death.

[¶28] While the district court did not provide an express determination regarding another place of lodging, the district court made findings relevant to the factor.  The district court found:

In 2009, Koller’s North Dakota driver’s license identified Grand Forks, ND, as his residential address. . . .  While living with Becky and Todd Anderson, Koller continued to receive his mail at his [Grand Forks] address. . . . 

. . . Koller’s death certificate listed his residence as [his Grand Forks address] as did his driver’s license. . . .  Koller’s obituaries (3) identified his residence as Binford, ND, formerly Grand Forks, ND.

. . . Becky swore to the contents of the application [for appointment of personal representative] which stated: “At the time of death, Decedent was domiciled in Griggs County, ND, though maintained a residence in Grand Forks County, ND.  Venue is Griggs county because at the time of Decedent’s death, Decedent was living and working in this County.”  The stated purpose for the application was for the limited purposes of a Declaratory Judgment action.

Koller did not bring any furniture with him to his mother’s home when he left Grand Forks . . . .  

[¶29] According to testimony, Koller also continued to pay rent for his Grand Forks apartment and kept furnishings and personal effects there.  The district court essentially found Koller maintained a residence in Grand Forks and that finding is supported by the record.

[¶30] We conclude the district court’s findings relevant to the absence or existence of another place of lodging are not clearly erroneous.

E.  Age and Self-Sufficiency

[¶31] Kemp argues the district court erred in its determination under the “age and self-sufficiency” factor because it ignored the facts existing at the time of Koller’s death.  The district court found that Koller was self-sufficient.  In finding that Koller was self-sufficient, the district court explained:

In 2003, Koller moved out of the family home to live on his own.  Koller had not been a dependant on Becky Anderson’s or Todd Anderson’s tax returns since 2002.  In 2005, 2 years after Koller had moved out of his mother’s home and began living on his own, Todd Anderson dropped Koller as an authorized driver on his auto liability insurance policy with Nodak because Koller was no longer living in the household. . . . 

. . . 

Koller was fully emancipated and self-sufficient at the time of his death and was not dependent on his mother and stepfather for financial support.  Koller was 26 years old at the time of his death and had been out of his mother’s house since age 18.  Koller had been removed as a listed driver on Todd Anderson’s insurance as of June 12, 2005.

[¶32] Evidence in the record supports the district court’s finding that Koller was self-

sufficient.  According to testimony, Koller moved out of the Andersons’ household when he turned eighteen.  He finished his education, joined the military, moved to Grand Forks, and had physical custody of his child.  While Koller clearly benefitted by having a rent-free place to stay for himself and his child, it does not necessarily equate to a lack of self-sufficiency.

[¶33] We conclude the district court’s findings regarding Koller’s age and self-

sufficiency are not clearly erroneous.

IV

[¶34] Kemp argues the district court erred in failing to determine Koller’s residence was established, as a matter of law, because his estate was probated in Griggs County.  We stated in 
Bahr-Renner
, “Courts agree that determining whether an individual falls within the meaning of the phrase [“resident of your household,”] requires a case-

specific analysis . . . and that determination of the issue is a question of fact.  Consequently, technical notions of legal residence and domicile are not controlling.”  2014 ND 39, ¶ 9, 842 N.W.2d 912 (citation omitted).  While the district court may have considered the location of Koller’s probate action as evidence weighing in favor of a finding that Koller was a resident of Todd Anderson’s household, it is not determinative, as a matter of law, and contrary to 
Bahr-Renner
.  Therefore, the district court did not err in failing to find Koller was a resident of Todd Anderson’s household, as a matter of law, merely because his estate was probated in Griggs County.

V

[¶35] Although we may not have drawn the same conclusions under de novo review, we cannot reweigh evidence under the clearly erroneous standard applicable in this case.  
See
 
Piatz v. Austin Mut. Ins. Co.
, 2002 ND 115, ¶ 24, 646 N.W.2d 681  (“We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony.  We give due regard to the trial court’s opportunity to assess the credibility of the witnesses, and the court’s choice between two permissible views of the evidence is not clearly erroneous.”).  After reviewing the entire record, we conclude the district court’s finding of fact that Koller was not a resident of Todd Anderson’s household for the purposes of the insurance policy is not clearly erroneous.  The district court’s findings are not induced by an erroneous view of the law, evidence in the record supports the findings, and we are not left with a definite and firm conviction a mistake has been made.  Additionally, the district court did not err in concluding that the lower “step-down” provision applied based on the finding that Koller was not a resident of Todd Anderson’s household for purposes of the insurance policy.  We affirm the district court’s declaratory judgment.

[¶36] Lisa Fair McEvers

Carol Ronning Kapsner

Dale V. Sandstrom

Douglas L. Mattson, D.J.

Gerald W. VandeWalle, C.J.

[¶37] The Honorable Douglas L. Mattson, D.J., sitting in place of Crothers, J., disqualified.