# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 146

| | |
|---|---|
| Jonathan T. Garaas and David Garaas, as Co-Trustees of the Barbara Susan Garaas Family Trust; Jonathan T. Garaas, as Trustee of the David & Elizabeth Garaas Family Trust; and David Garaas, as Trustee of the Jonathan & Jill Garaas Family Trust, | Plaintiffs and Appellants |
| v. | |
| Continental Resources, Inc., a corporation formed under the laws of the State of Oklahoma, | Defendant, Third-Party Plaintiff, and Appellee |
| v. | |
| Bridgepoint Mineral Acquisition Fund 2, L.L.C. and Calf Creek Royalty LTD, | Third-Party Defendants and Appellees |

### No. 20250046

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Robin A. Schmidt, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Bahr, Justice.

Jonathan T. Garaas, Fargo, ND, for plaintiffs and appellants.

James E. Dallner (argued), Billings, MT, for defendant, third-party plaintiff, and appellee Continental Resources, Inc., a corporation formed under the laws of the State of Oklahoma; Quinn P. Fylling (appeared), Bismarck, ND, and Demetri J. Economou (appeared), Houston, TX, for third-party defendants and appellees Bridgepoint Mineral Acquisition Fund 2, L.L.C. and Calf Creek Royalty LTD.

**Garaas, et al. v. Continental Resources, et al.**
**No. 20250046**

**Bahr, Justice.**

[¶1] Plaintiffs (the "Garaas Trusts" or "Trusts") appeal from an amended judgment dismissing the Trusts' claims against Continental with prejudice; granting Continental's declaratory judgment claim against third-party defendants Bridgepoint Mineral Acquisition Fund 2, L.L.C. and Calf Creek Royalty LTD; concluding the Trusts' nonparticipating royalty interest ("NPRI") calculation does not include State-owned acreage; providing the calculation for the third-party defendants' net revenue interest; concluding N.D.C.C. § 47-16-39.1 does not apply and the Trusts are not the prevailing party; and awarding Continental $293.00 in costs and disbursements. We reverse and remand for further proceedings consistent with this opinion.

I

[¶2] This action involves competing claims to oil and gas royalty interests covering lands located in Section 31, Township 154 North of Range 97 West in McKenzie County. The dispute involves the proper calculation of the Trusts' NPRI. The three plaintiff Trusts each own an undivided one-third interest in a royalty of 2% of all the oil and gas produced and saved from the NW¼NE¼ of Section 31-154-97. The Trusts' royalty interests stem from a 1951 royalty deed received by John O. Garaas and Barbara Garaas, as joint tenant grantees. The 1951 conveyance to the Garaases occurred before any transaction resulting in the acquisition of any mineral interest owned by third-party defendants Bridgepoint or Calf Creek.

[¶3] Defendant Continental is the operator of an oil well, known as the Dallas 4-30H, which involves a two-section spacing unit, or drilling unit, covering all of Sections 31-154-97 and 30-154-97, situated in both McKenzie and Williams Counties. Third-party defendants Bridgepoint and Calf Creek own the minerals in and under the NW¼NE¼ of Section 31-154-97, "*less and excepting therefrom* that part of the NW¼NE¼ located in the Missouri River below the ordinary high

1

water mark of the Historical Missouri riverbed channel and burdened by the royalty interests owned by each of the Plaintiff Trusts."

[¶4] Our prior opinion, *Garaas as Co-Trustees of Barbara Susan Garaas Family Trust v. Continental Resources, Inc.*, 2024 ND 68, ¶¶ 2-4, 5 N.W.3d 783 ("*Garaas I*"), sets forth relevant facts and proceedings in this case:

> In January 2022, the Garaas Trusts commenced an action against Continental requesting the district court: (1) find the Trusts' NPRI be based on a distribution factor of [at least] 0.0002083; (2) order a monetary judgment against Continental for any outstanding royalties still owed; (3) order the statutory interest under N.D.C.C. § 47-16-39.1 of eighteen percent interest per annum until paid for any wrongfully withheld royalties; and (4) order Continental pay court costs, disbursements, and attorney's fees as provided under N.D.C.C. § 47-16-39.1. Continental filed its answer and a third-party complaint, and suspended payments to the Trusts pending a resolution.
>
> In January 2023, the Garaas Trusts moved for partial summary judgment requesting the district court find: (1) the 1951 royalty deed granted them a fixed fractional 2% royalty interest and not a floating royalty; (2) the *Duhig* rule or estoppel by the warranty deed entitled them to the inclusion of the State-owned mineral acreage in the calculation of their NPRI; (3) that Continental was using an incorrect tract acreage in the NPRI calculations; and (4) a demand for an accounting. The court subsequently found the Trusts each have a 1/3 interest in a fixed fractional 2% royalty interest, granted a partial summary judgment in favor of the Trusts on this issue, and a general denial of the remaining issues.
>
> In July 2023, the district court held a status conference during which the parties requested the court enter judgment based on a stipulated set of facts. The parties jointly entered a set of stipulated facts, and both sides submitted stipulated exhibits, briefs, and proposed findings of facts, conclusions of law and order for judgment. The court entered its findings of fact, conclusions of law and order for judgment in favor of Continental, in which it determined the Trusts' NPRI does not include State-owned acreage in the calculation of acres burdened and dismissing all claims with prejudice. *The court did not include findings relating to the Trusts' assertion Continental improperly withheld royalty payments. The Garaas*

*Trusts assert Continental improperly withheld royalty payments owed to the Trusts, and their right to interest under the N.D.C.C. § 47-16-39.1 remain unresolved.*

(Emphasis added.) As stated in *Garaas I*, ¶ 6, the district court's initial findings and judgment concluded:

> [T]he Trusts' NPRI does not include State-owned acreage; the Trusts each own an undivided 1/3 interest in a 2% NPRI of the 39.01-acre portion of NW¼NE¼ Section 31-154-97 in McKenzie County, North Dakota; the *Duhig* rule does not apply to this case; and the combined payment factor to the Garaas Trusts is 0.000622688.

However, we dismissed the appeal because the court made no findings on "whether Continental's suspension of payments was permissible or wrongful, triggering the penalties provided under section 47-16-39.1," and the judgment did not dispose of all the claims raised and was not final. *Id.* ¶¶ 6-7.

[¶5]   On remand, the district court declined the Trusts' argument to reconsider its prior order addressing the NPRI calculation and concluded that Continental's suspension of payments was permissible under the "safe harbor" provision of N.D.C.C. § 47-16-39.1, holding section 47-16-39.1 did not apply and the Trusts are not the prevailing party. The court entered an amended judgment, and the Trusts again appealed. Continental and the third-party defendants, as appellees, filed a joint brief on appeal (collectively, "Continental").

II

[¶6]   The issues presented on appeal were decided by the district court based on stipulated facts and exhibits. *See Golden v. SM Energy Co.*, 2013 ND 17, ¶ 18, 826 N.W.2d 610 ("If no further evidence can be produced at trial that was not already before the court, the parties may provide a stipulation of facts and exhibits, together with any argument permitted, for trial based on the record submitted."). "When a case is tried before a district court on the basis of stipulated facts or documentary evidence, this Court reviews the court's findings of fact under the clearly erroneous standard of review of N.D.R.Civ.P. 52(a)." *Nodak Mut. Ins. Co. v. Bahr-Renner*, 2014 ND 39, ¶ 7, 842 N.W.2d 912. However,

"it is generally recognized that stipulations as to the law are invalid and ineffective." *Higgins v. Lund*, 2025 ND 47, ¶ 38, 17 N.W.3d 828. "Trial and appellate courts are not bound by stipulations pertaining to questions of law, or that have the effect of a stipulation on a question of law." *Id.* (quoting 83 C.J.S. *Stipulations* § 28 (2021)). "Such stipulations will be disregarded." *Id.*

[¶7] The district court adopted the parties' stipulations as its findings of fact. The parties do not challenge the court's factual findings.

### III

[¶8] The royalty deed's description of the property states the described property contains "forty (40) acres." Stating the property contains "approximately forty (40) acres,"[1] the parties stipulated the property contains 39.94 mineral acres. *See Hild v. Johnson*, 2006 ND 217, ¶ 13, 723 N.W.2d 389 ("When there is a discrepancy in a deed between the specific description of the property conveyed and an expression of the quantity conveyed, the specific description is controlling."); *see id.* ¶ 16 ("A statement in a deed of the quantity of land conveyed may be considered only if all other elements of description in the deed are ambiguous or uncertain."). The parties further stipulated:

> The property at issue in this case (NW¼NE¼ of Section 31-154-97, McKenzie County, North Dakota) abuts the Missouri River. The property is subject to the ordinary high-water mark of the historical Missouri riverbed channel as determined by the North Dakota Industrial Commission ("NDIC") under the provisions of Chapter 61-33.1 of the North Dakota Century Code.
> The process for determining the ordinary high-water mark of the historical Missouri riverbed is set forth in N.D.C.C. § 61-33.1-03. Wenck Associates, Inc., ("Wenck") was selected as the engineer and

---

[1] Various records the Trusts assert establish their record title refer to the property as containing forty acres, more or less. For example, a 1921 warranty deed concludes its description of the property stating, "containing forty acres more or less according to Government Survey there." A 1940 Auditor's Tax Deed to County and the 1948 County Deed to John and Lucy Landers conclude their description of the property, stating, "containing 40 acres, more or less, according to the U.S. Government survey thereof."

4

surveying firm to complete the review of the survey conducted by the United States Army Corps of Engineers pursuant to N.D.C.C. § 61-33.1-03.

In 2018, Wenck prepared a report, identified as Wenck file #4384-0001. In September 2018, the NDIC issued its Final Ordinary High Water Mark Determination (Case No. 26584), including the Wenck Final Report.

Based upon the NDIC determination and Wenck report, the NW¼NE¼ of Section 31-154-97 contains 39.94 mineral acres, consisting of 39.01 mineral acres above the ordinary high-water mark of the Missouri River and 0.93 mineral acres below the ordinary high-water mark owned by the State of North Dakota.

Based upon the final NDIC and Wenck Report, the acreage of the two section spacing unit for the Dallas 4-30H oil well has a total of 1261.29 mineral acres. According to the North Dakota Department of Trust Lands, there are 630.97 mineral acres in Section 31-154-97 and 630.32 mineral acres in Section 30-154-97 [totaling 1261.29 mineral acres for the entire spacing unit].

Prior to the final NDIC determination and Wenck Report, Defendant Continental Resources, Inc., relied upon a preliminary survey to determine the acreage in the subject two section spacing unit to determine the proper distribution factors. Under the preliminary survey, relied upon by Continental Resources, Inc., there were 1267.01 mineral acres in the two section spacing unit for the Dallas 4-30H oil well. The NW¼NE¼ of Section 31-154-97 includes minerals lying both above and below the ordinary high-water mark. Continental credited the State of North Dakota with the minerals lying below the high water mark and credited third party defendants with the minerals lying above the ordinary high water mark [39.447588 lying above the ordinary high water mark owned by the Third Party Defendants *burdened by* the royalty interest(s) owned by each Plaintiff Trust]. Continental credited Plaintiffs' NPRI as only burdening the mineral interests of Third-Party Defendants, and the calculation did not include the acreage owned by the State of North Dakota lying below the ordinary high water mark.

[¶9] The parties' stipulation identified two disputes for the district court:

The first dispute between the three Plaintiff Trusts and Defendant Continental Resources, Inc., involves whether the Plaintiffs' two percent (2%) NPRI is calculated on the total acreage

5

of the NW¼NE¼ of Section 31-154-97. Continental Resources, Inc., contends the Plaintiffs' royalty interest should not be calculated on the acreage owned by the State of North Dakota in the NW¼NE¼ of Section 31-154-97. The three Plaintiff Trusts contend their 2% NPRI is calculated on the total acreage in the NW¼NE¼ of Section 31-154-97, whether owned by the State of North Dakota or by private parties.

The second dispute between the Plaintiff Trusts and Defendant involves whether the payment factors [distribution factors] should be based upon the acreage in the spacing unit and subject quarter-quarter section, or not. As stated above Continental Resources, Inc., calculated its payment factor based upon there being 1267.01 mineral acres in subject spacing unit. Although the final NDIC determination resulted in a decrease of acreage in the spacing unit, Continental Resources, Inc., did not update and decrease the unit acreage. Rather, Continental Resources, Inc., continued with the acreage determinations it made under the preliminary survey [two section spacing unit of 1267.01 acres].

[¶10] In their stipulation, the parties provided the district court with competing calculations of the combined payment factor for the Trusts.

[¶11] Based on the stipulated facts, the district court found the subject property abuts the Missouri River and is subject to the ordinary high water mark ("OHWM") of the historical Missouri riverbed channel as determined by the North Dakota Industrial Commission under N.D.C.C. ch. 61-33.1. The court noted the process for determining the OHWM is set forth in N.D.C.C. § 61-33.1-03. Based on the Industrial Commission's determination and 2018 Wenck report, the court found the subject property "contains 39.94 mineral acres, consisting of 39.01 mineral acres above the ordinary high-water mark of the Missouri River and 0.93 mineral acres below the ordinary high-water mark owned by the State of North Dakota."

[¶12] In its conclusions of law, the district court held the landowners of the subject property "never owned" any minerals underlying the portion of land below the OHWM of the Missouri River. Rather, the court concluded the State owned the minerals underlying the land below the high water mark of the Missouri River. The court further concluded, "Because a non-participating

6

royalty interest by its nature is carved out of a mineral interest, it could not be carved out of an interest that included State owned lands." Based on those conclusions, the court held the 1951 royalty deed conveyed a 2% NPRI and "the only lands to which the Plaintiffs' NPRI could apply are the 39.01-acre portion of the NW/4 NE/4."

[¶13] The district court concluded the Trusts' NPRI is calculated "by multiplying the royalty percentage by the acres burdened divided by the unit acreage. The formula is: 2% x [acres burdened] / [acres in unit] = NPRI," and the "acres burdened" did not include State-owned land. The court further stated, based on the NDIC determination and Wenck report, the Trusts' NPRI calculation would be 2% x 39.01 / 1261.29 = .00061857.

[¶14] However, the district court ultimately adopted Continental's proposed calculation which was "slightly different" in that it "divided by a 1267.01 acre spacing unit," and used an "upward adjustment of burdened acres (from 39.01 to 39.447588)" as an "equitable distribution of the surplus acreage among the riparian owners." On that basis, the court calculated the Trusts' NPRI as 2% x 39.447588 / 1267.01 = .000622688. The court held Continental's calculation of the Trusts' NPRI and the third-party defendants' interest were proper.

IV

[¶15] The Trusts argue the district court erred in concluding the calculation of their NPRI does not include State-owned acreage. They further argue the court erred in adopting Continental's calculation of the Trusts' NPRI.

A

[¶16] The Trusts argue the 1951 royalty deed, from which they derive their royalty interests, granted a "fixed fractional royalty" of 2% of all oil and gas production in the NW¼NE¼ of Section 31-154-97, not a fraction of royalty or floating royalty. The Trusts further contend the 1951 grant of royalty was not limited to production only from the grantors' "privately-owned" lands, but includes production from the entire property as described in the deed. The Trusts

7

contend our decision in *THR Minerals, LLC v. Robinson*, 2017 ND 78, ¶ 3, 892 N.W.2d 193, supports their interpretation of the deed.

[¶17] Continental argues the district court correctly held the royalty deed does not include State-owned acreage. Continental asserts title to lands beneath navigable waters passed from the federal government to the states on their admission to the Union. *See 101 Ranch v. United States*, 905 F.2d 180, 182 (8th Cir. 1990); *State ex rel. Sprynczynatyk v. Mills*, 523 N.W.2d 537, 539 (N.D. 1994). Continental asserts that, on North Dakota's admission to the Union on November 2, 1889, title to the beds underlying the Missouri River vested in the State and, thus, "no conveyance from the Federal Patent in 1921 forward conferred an interest in those portions" of the subject property lying below the OHWM. Continental argues the landowners "never owned" any minerals underlying the portion of the subject property below the OHWM.

[¶18] Our rules for interpreting the language of a deed are well established:

> We interpret deeds in the same manner as contracts. N.D.C.C. § 47-09-11. In construing a deed, the primary purpose is to ascertain and effectuate the grantor's intent. *EOG Res., Inc. v. Soo Line R.R. Co.*, 2015 ND 187, ¶ 15, 867 N.W.2d 308; *Wagner v. Crossland Constr. Co., Inc.*, 2013 ND 219, ¶ 8, 840 N.W.2d 81. The intent must be ascertained from the writing alone, if possible. *Wagner*, at ¶ 8. When a deed is unambiguous, this Court decides the parties' intent from the instrument itself. *Id.* "A deed is ambiguous if rational arguments can be made in support of contrary positions as to the meaning of the term, phrase, or clause in question." *EOG Res.*, at ¶ 15. Whether a deed is ambiguous presents a question of law and is fully reviewable on appeal. *Id.*

*Sargent Cnty. Water Res. Dist. v. Mathews*, 2015 ND 277, ¶ 6, 871 N.W.2d 608.

[¶19] The Trusts' royalty interests stem from the royalty deed dated September 7, 1951, given by John W. Landers and Lucy Landers, as grantors, to John O. Garaas and Barbara Garaas, as joint tenant grantees. The 1951 deed provides, in relevant part:

8

[The grantors] do hereby grant, bargain, sell, convey, transfer, assign and deliver unto [the grantees] a royalty of *two per cent (2%) of all* the oil, gas, casinghead gas, casinghead gasoline and other hydrocarbons produced and saved *from the following described lands* situate in McKenzie County, North Dakota, to-wit:

> The Northwest Quarter of the Northeast Quarter (NW¼NE¼) of Section Thirty-one (31) in Township One Hundred Fifty-four (154) North of Range Ninety-seven (97) West of the Fifth Principal Meridian, McKenzie County, North Dakota, containing forty (40) acres.

to be delivered free of cost and expense to grantee in the pipe lines to which the wells may be drilled on the above described premises may be connected or in tanks in which said products may be stored.

(Emphasis added.) The deed further provides the grantors "do hereby warrant the title to the same and that we have lawful authority to sell and convey said royalty." The parties in this case stipulated the grantors owned sufficient minerals to fully honor the grant:

> At the time of the execution and delivery of said Royalty Deed, the grantors John W. Landers and Lucy Landers, had owned sufficient minerals in said NW¼NE¼ of Section 31-154-97, McKenzie County, North Dakota, so that the full 2% of the forty (40) acre royalty in and to said NW¼NE¼ of Section 31 could be fully honored.

[¶20] Our decision in *THR Minerals* guides the interpretation of the 1951 royalty deed. *THR Minerals* interpreted a 1942 assignment of royalty, which in part stated the assignors "do hereby sell, assign, transfer, convey, and set over unto the said assignee, *all of our* right, title and interest in and to six and one-fourth per cent (6¼%) Royalty, of *all* the oil and of *all* the gas produced and saved from the hereinafter described land . . . ." 2017 ND 78, ¶¶ 3, 9 (emphasis added). It was undisputed that at the time of the conveyance, the assignors owned only a one-third interest in the described land. *Id.* ¶ 3. THR argued the assignors conveyed to the assignee a 6.25 percent royalty interest in the entire property; the Robinsons argued the assignors created a 6.25 percent royalty burden on only the one-third interest the assignors actually owned. *Id.* ¶ 3. The district court held

9

that "to be made whole, the heirs of [the assignee] are entitled to 18.75% [i.e., three times 6.25 percent] of the interest owned by [the assignors] as a result of the February 17, 1942 conveyance." *Id.* ¶ 4. This Court agreed with the district court, holding the assignment's language unambiguously showed the assignors' intent that the assignee receive a 6.25 percent royalty based on oil and gas produced from the entire tract of land described. *Id.* ¶ 14. The phrase "of all the oil and of all the gas produced and saved from the hereinafter described lands" defined "how the 6.25 percent royalty was to be calculated," and the words "described lands" further showed "the amount conveyed was to be taken as a percentage of the entire interest." *Id.*

[¶21] Here, the plain language of the 1951 royalty deed is unambiguous. The deed grants a 2% royalty "of *all* the oil, gas, casinghead gas, casinghead gasoline and other hydrocarbons produced and saved from the following described lands . . . ." The "described lands" are specifically identified as the NW¼NE¼ of Section 31-154-97, "containing forty (40) acres." As in *THR Minerals*, the deed's language unambiguously shows the grantors' intent the grantees receive a 2% royalty "of all" oil and gas "produced and saved" from the entire tract of land described. Moreover, the parties stipulated the grantors owned sufficient minerals in NW¼NE¼ of Section 31-154-97 so the full 2% of the 40-acre royalty in the tract "could be fully honored."

[¶22] On this record, the 1951 royalty deed unambiguously shows the Landers' intent the Garaases, as the Trusts' predecessors in interest, receive a 2% royalty based on all oil and gas produced from the entire tract of land described, and that the grantors had "sufficient minerals" to satisfy the grant.

B

[¶23] The Trusts argue the district court erred in adopting Continental's calculation of the Trusts' NPRI.

[¶24] Continental's calculation did not include State-owned acreage. It also included an "upward adjustment" of the burdened properties, resulting in "an equitable distribution of the surplus acreage among the riparian owners." The district court adopted Continental's proposed calculation, including the

10

"upward adjustment." Neither Continental nor the court provided an adequate factual or legal basis for the "upward adjustment." Based on its order, this Court is unable to understand the basis for the court adopting the "upward adjustment."

[¶25] We reverse the amended judgment and remand for the district court to recalculate the Trusts' NPRI based on the Trusts receiving a 2% royalty on all oil and gas produced from the entire tract of land, explaining the calculation it uses to calculate the Trusts' NPRI.

V

[¶26] The Trusts argue the district court erred in holding Continental's withholding of royalty payments to the Trusts fell within the safe harbor provisions of N.D.C.C. § 47-16-39.1.

[¶27] Section 47-16-39.1(1), N.D.C.C., provides an operator's failure to pay oil and gas royalties constitutes a breach of the obligation arising under the oil and gas lease. Under section 47-16-39.1(1), an operator who fails to pay oil or gas royalties within 150 days after oil or gas produced is marketed, is required to pay interest on the unpaid royalties at the rate of 18 percent per annum until paid. However, section 47-16-39.1(1) has a safe harbor provision. The safe harbor provision provides, "This section does not apply . . . *in the event of a dispute of title existing that would affect distribution of royalty payments*[.]" N.D.C.C. § 47-16-39.1(1) (emphasis added).

[¶28] The district court found "[t]he parties in this matter have competing claims to the same royalty," and that "[i]t is undisputed if the Plaintiff [Trusts] is paid more, the third-party defendant is paid less." The court concluded N.D.C.C. § 47-16-39.1 does not apply because "[a] dispute exists that would affect distribution of royalty payments in this matter."

[¶29] We previously "interpreted N.D.C.C. § 47-16-39.1 and held the safe harbor provision applied and suspension of royalty payments was lawful when there was a dispute of title that would affect distribution of royalty payments." *Whitetail Wave LLC v. XTO Energy, Inc.*, 2024 ND 52, ¶ 16, 5 N.W.3d 526; *see also*

11

*Vic Christensen Min. Tr. v. Enerplus Res. (USA) Corp.*, 2022 ND 8, ¶¶ 10-12, 969 N.W.2d 175. We have also held "suspension of all royalty payments is justified when there is a title dispute, including the payments from a portion of the royalty interests held that ownership was undisputed." *Whitetail Wave*, ¶ 16.

[¶30] By its plain terms, the safe harbor provision applies if a "dispute of title" exists. N.D.C.C. § 47-16-39.1. The district court did not find a "dispute of title" existed; rather, it found the parties have "competing claims to the same royalty."

[¶31] The Trusts assert the safe harbor provision does not apply because "there was no dispute of title." Continental argues the safe harbor provision applies because "there is a dispute as to the amount of payments." Neither party briefed the meaning of "dispute of title" as used in N.D.C.C. § 47-16-39.1.

[¶32] We decline to interpret the meaning of "dispute of title" as used in N.D.C.C. § 47-16-39.1 without the benefit of adversarial briefing. Because the district court's findings do not support its conclusion section 47-16-39.1 does not apply, we reverse the amended judgment and remand and instruct the district court to reconsider whether Continental's withholding of royalty payments to the Trusts falls within the safe harbor provisions of section 47-16-39.1 and to explain the basis of its conclusion.

VI

[¶33] The Trusts argue the district court should have compelled an accounting.

[¶34] Generally, an equitable accounting "is never ordered as a matter of course." *Petro-Hunt, L.L.C. v. Tank*, 2024 ND 46, ¶ 35, 4 N.W.3d 526 (quoting *Stuber v. Taylor*, 200 N.W.2d 276, 280 (N.D. 1972)).

> Equitable jurisdiction for an accounting may be invoked when (1) there is a fiduciary relationship between the parties, accompanied by a duty on the part of the defendant to render an account, (2) there are mutual accounts, or, if the account is all on one side, the account is complicated, and (3) there is a need for discovery.

12

*Id.* (quoting *Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 31, 680 N.W.2d 634). "A court may also assume jurisdiction for an accounting if there is some other basis for equitable jurisdiction." *Ritter*, ¶ 31. "Whether the plaintiff has established a right to an accounting and the existence of a relationship sufficient to support that right are questions of fact, which the court must determine." *Petro-Hunt*, ¶ 36 (quoting 1A C.J.S. *Accounting* § 59). A district court exercises discretion when determining whether to grant an equitable accounting. *Id.* ¶ 37.

[¶35] It is undisputed Continental owes the Trusts royalties. On remand, the district court should address the Trusts' arguments requesting both an accounting of the owed royalties and entry of a monetary judgment against Continental for any outstanding royalties owed to the Trusts.

## VII

[¶36] The district court determined the Trusts were not the prevailing party, stating "the court has ruled against them on each claim[.]" The court awarded Continental $293.00 in costs and disbursements under N.D.C.C. §§ 28-26-02 and 28-26-06. The Trusts argue the district court erred in concluding Continental was the prevailing party, contending the Trusts were the "prevailing party" and costs and disbursements were wrongfully taxed against the Trusts.

[¶37] Section 47-16-39.1(1), N.D.C.C., provides, "The prevailing party in any proceeding brought under this section is entitled to recover court costs and reasonable attorney's fees." We have said the "prevailing party" analysis under N.D.C.C. § 28-26-06 guides our consideration of the same term under N.D.C.C. § 47-16-39.1:

> Determining who is a prevailing party for an award of disbursements under N.D.C.C. § 28-26-06 is a question of law, subject to de novo review, while the question of the amount to be allowed for disbursements and costs is one of fact, subject to an abuse of discretion standard. The determination of who is a prevailing party entitled to recover necessary disbursements under N.D.C.C. § 28-26-06 is based upon success on the merits, not damages. If opposing litigants each prevail on some issues, there

13

may not be a single prevailing party for whom disbursements may be taxed. A prevailing party is one in whose favor a judgment is rendered, regardless of the amount of damages awarded.

Generally, the prevailing party to a suit, for the purpose of determining who is entitled to costs, is the one who successfully prosecutes the action or successfully defends against it, prevailing on the merits of the main issue, in other words, the prevailing party is the one in whose favor the decision or verdict is rendered and the judgment entered.

*Dorchester Mins., L.P. v. Hess Bakken Invs. II, LLC*, 2024 ND 137, ¶ 24, 9 N.W.3d 657 (quoting *Van Sickle v. Hallmark & Assocs., Inc.*, 2013 ND 218, ¶ 44, 840 N.W.2d 92).

[¶38] The Trusts prevailed at the partial summary judgment stage by establishing their 2% NPRI is a fixed royalty, rather than a floating royalty. They also prevailed because the payment factors used to calculate the Trusts' royalty increased substantially after the Trusts brought this action. While the district court held Continental's calculation of the Trusts' NPRI is proper, we reverse that determination.

[¶39] The district court erred as a matter of law in determining Continental is the prevailing party. Rather, the Trusts are the prevailing party. We reverse the award of costs and disbursements to Continental. On remand, we instruct the district court to decide the proper amount to be allowed to the Trusts for costs and disbursements.

## VIII

[¶40] We have considered the parties' other arguments and conclude they are unnecessary for our decision or are without merit. We reverse the amended judgment and remand for further proceedings consistent with this decision.

[¶41] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers

14

Jerod E. Tufte

Douglas A. Bahr